135 So.2d 435 (1961)
Nathaniel WILLIAMS, Petitioner,
v.
FLORIDA INDUSTRIAL COMMISSION and Municipal Auto Sales, Inc., Respondents.
No. 61-367.
District Court of Appeal of Florida. Third District.
December 18, 1961.
*436 Kaplan, Ser & Abrams, Miami, and Donald Feldman, Coral Gables, for petitioner.
Burnis T. Coleman and Lawrence Kanzer, Tallahassee, for respondents.
HENDRY, Judge.
This is a petition for writ of certiorari to review a denial of petitioner's claim for unemployment benefits.
The petitioner-claimant filed his initial claim for unemployment compensation on January 12, 1961. His employer, Municipal Auto Sales, Inc., thereafter notified the Florida Industrial Commissioner's Employment Compensation Division that claimant voluntarily quit his job.
Claimant was denied unemployment compensation by the Claim Examiner and Appeals Referee on the ground that claimant had voluntarily left his employment without good cause, within the meaning of § 443.06(1) Fla. Stat., F.S.A.
Appeal was thereafter duly taken to the Board of Review of the Florida Industrial Commission's Unemployment Compensation Division. The Board of Review denied leave to appeal and made the decision of the Appeals Referee the decision of the Board of Review.
Petitioner seeks judicial review in this court.
There was no dispute in the evidence, which was heard by the Appeals Referee and consisted solely of testimony of the claimant. The evidence shows the claimant to be a thirty-six year old Negro who became employed by the employer, Municipal Auto Sales, Inc., as a porter in September, 1959. His duties included cleaning the business premises and moving cars from the main office to the used car lot. The job was suitable with respect to wages, hours and working conditions. In August, 1960, claimant applied for and received the employer's permission to be absent from work for one week in order that he could attend his uncle's funeral in the State of South Carolina.
On December 18, 1960, his sister, with whom he lived in Miami, died. On that same day claimant asked his supervisor's permission to be off until sometime the following week as his sister's body was to be shipped back to South Carolina for burial. He was unable to specify an exact date for his return because he did not know how long he would be detained in South Carolina after the funeral.
Claimant's supervisor informed him that he could not promise to hold his job for him for the period of time he had indicated he would be gone but would try to do so. Claimant then left his employment without any definite assurance that he would have a job when he returned.
Claimant and his deceased sister's husband wired for and received money from relatives in South Carolina necessary to take care of initial expenses involved with the purchase of a casket, funeral directors' fees and train tickets. He remained in Miami until Thursday night, December 22. He stated that the time from the death of his sister on Sunday until Thursday night, when they left with the body for burial in South Carolina, was spent by him in assisting his brother-in-law with the funeral arrangements and taking care of the small children of his deceased sister. The reason he gave for having to assist was that his brother-in-law was unemployed and without funds or credit. He attended the funeral in South Carolina on Friday, December 23, and remained there until the following Tuesday so that he could go to the office of the loan company which had loaned his father money for the funeral expenses with the understanding that he would join his father on the note. Tuesday *437 was the earliest opportunity he had to go to the loan office as it had been closed on account of the Christmas holidays. He left for Miami on Tuesday evening after he had attended to the business he had with the loan company and arrived in Miami on Wednesday and reported for work at noon. He was told, at that time, by the manager that his job had been filled by someone else as they could not hold his job until he got back.
Based upon these facts the Appeals Referee found that the claimant had "voluntarily left his employment without good cause" and was not entitled to unemployment compensation and those findings were adopted as the decision of the Board of Review.
The sole question for determination is whether there is competent, substantial evidence in the record to support the findings and conclusions of the Appeals Referee and Board of Review that the claimant "voluntarily left his employment without good cause" within the meaning of § 443.06(1) Fla. Stat., F.S.A.[1]
The respondent admits that petitioner had "good cause" within the meaning of the statute to absent himself from his job while he traveled to South Carolina, attended his deceased sister's funeral, arranged for a loan while in South Carolina and return to his job. However, respondent contends that the petitioner did not have "good cause" for voluntarily leaving his employment on Monday, December 19 and remaining away until he left for South Carolina on Thursday, December 22. Likewise, respondent contends that petitioner did not have "good cause" for remaining away from work on Monday, December 26 and Tuesday, December 27, the funeral having been held Friday, December 23.
The petitioner contends that there was "good cause" shown for his being away on each and every day from the death of his sister on December 18 until he returned for work on December 28.
The record reveals unusual circumstances that reasonably required or justified his being away from his job on the days he was absent. There can be no question but that a person of more education, understanding and money or credit could have accomplished this sad mission in a much shorter period of time. Whether one day or ten days is a reasonable time to take off from one's job to bury the dead must in each case depend upon all of the surrounding circumstances and persons involved. In this case, we have an uneducated colored man, who, in addition to his own obligations had undertaken to help the family provide for the cost of his sister's burial in the family burial ground back in their native State of South Carolina. Having no money and little credit, he found it difficult and time-consuming to make all these necessary funeral arrangements in Miami and in South Carolina. A loan company in South Carolina with which he had formerly dealt, furnished the money for the funeral expenses to his father with the understanding that the claimant would sign a note therefor with his father. When he arrived in South Carolina the loan company office was closed on account of the holidays which *438 included Saturday, Sunday and Christmas, which was celebrated on Monday. On Tuesday, when he was able to get into the loan office, he and his father went there and signed the note as he had agreed. He left South Carolina thereafter in time to arrive back in Miami on Wednesday at 10:00 o'clock A.M.; he reported for work at 12:00 o'clock that day and was told that his job had been given to someone else as they could not hold it for him.
The law recognizes the demands of familial obligations. Where, as in the case at bar, an employee leaves his employment because of such obligations, the courts have consistently held that the leaving, even if found to be voluntary, would be with "good cause" and that he is entitled to the available benefits. To hold otherwise would be to make the realities of family considerations meaningless. 81 C.J.S. Social Security and Public Welfare § 168, p. 256.
It was said in the case of Bliley Electric Co. v. Unemployment Compensation Board of Review, 158 Pa.Super. 548, 45 A.2d 898, 904, that:
"The Unemployment Compensation Law is remedial, humanitarian legislation of vast import. Its benefits sections must be liberally and broadly construed. It is primarily intended for the benefit of unemployed workers. Consequently, the cardinal principle under which the act is administered is that an employee in covered employments can be denied its benefits only by explicit language in the act which clearly and plainly excludes him. * * * Presumably, an unemployed worker in a covered employment is entitled to benefits, and loses them only when he falls under the condemnation of a disqualifying provision of the act, fairly, liberally and broadly interpreted." See Pittsburgh Pipe & Coupling Co. v. Unemployment Compensation Board of Review, 401 Pa. 501, 165 A.2d 374.
Our examination of the record made below and the consideration of decisions and other pertinent authorities convinces us that the Board of Review's findings that Nathaniel Williams "voluntarily left his employment without good cause" and was, therefore, not entitled to unemployment benefits was not supported by competent substantial evidence. It follows, therefore, that the writ of certiorari be granted. The decision of the Board of Review denying the petitioner unemployment benefits is quashed and the cause is remanded for the entry of an order allowing the benefits in conformity with this opinion.
Petitioner's claim for attorneys' fees is also granted under § 443.16, Fla. Stat., F.S.A., in the amount of Three Hundred ($300.00) Dollars.
It is so ordered.
NOTES
[1] That section reads as follows:

"443.06 Disqualification for benefits
"An individual shall be disqualified for benefits:
"(1) For the week in which he has voluntarily left his employment without good cause or in which he has been discharged by his employing unit for misconduct connected with his work, if so found by the commission, and for not more than the twelve weeks which immediately follow such week, as determined by the commission in each case according to the circumstances in each case or the seriousness of the misconduct. Provided, however, that disqualification under this subsection shall continue for the full period of unemployment next ensuing after he has left his work voluntarily without good cause or has been discharged for misconduct connected with his work and until such individual has become re-employed and has earned wages equal to or in excess of ten times his weekly benefit amount."