436 So.2d 332 (1983)
FLORIDA SHERIFFS YOUTH FUND, Appellant,
v.
DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, State of Florida, Unemployment Appeals Commission, and Mary E. Mikell, Appellees.
No. 83-258.
District Court of Appeal of Florida, Second District.
August 12, 1983.
*333 Keith C. Tischler of Madigan, Parker, Gatlin, Swedmark & Skelding, Tallahassee, for appellant.
John D. Maher, Tallahassee, for appellee Unemployment Appeals Com'n.
BOARDMAN, Acting Chief Judge.
The Florida Sheriffs Youth Fund appeals an order by appellee Unemployment Appeals Commission (the Commission) ruling appellee/claimant Mary E. Mikell eligible for unemployment compensation benefits. We reverse.
Claimant and her husband, James Mikell, were hired by appellant in March 1978 to work at the Girls Villa in Bartow as "cottage" or "group" parents. At the Girls Villa, a team of two group parents lives with a small number of children, providing a stable, family setting.
In order to produce a family environment, appellant requires that each team of group parents be a married couple. With the limited exception of relief or temporary parents, all persons serving as group parents fulfill this requirement. This arrangement is the standard practice in institutions such as this.
The Mikells were advised of their team status when they were hired. It was made clear to them that to continue employment as group parents, both must perform satisfactorily and that the resignation or discharge of one would result in the discharge of the other.
On May 27, 1982, both Mr. and Mrs. Mikell were discharged due to Mr. Mikell's misconduct, i.e., his failure to comply with appellant's guidelines. Claimant was a satisfactory employee not guilty of any misconduct;[1] her discharge was due solely to the condition of employment requiring a husband and wife team as group parents.
Claimant applied for unemployment compensation benefits and was awarded benefits by the claims adjudicator. Appellant requested a hearing before an appeals referee, who found that claimant had left her employment without good cause attributable to her employer and was therefore disqualified for benefits. She appealed to the Commission, which reversed the referee's decision. This appeal followed timely.
The instant case is one of first impression and does not fit neatly within one or the other of the alternatives set forth in the statute. Accordingly, this court must look *334 to the intent and spirit of the statute to fashion an equitable remedy.
This approach was taken in W.M. Palmer Co. v. Meeks, 354 So.2d 893 (Fla. 1st DCA 1978), in which the claimant advised her employer that she wished to remain at home to take care of her children. The company asked her to stay on until a replacement for her could be found, and she agreed to do so. Thereafter, once the employer had made arrangements for replacing her, she was advised that her services would no longer be needed after a certain date and was terminated. Because there was no misconduct on her part, the appeals referee and the Commission ruled that she was entitled to unemployment compensation benefits. The first district, however, found this ruling "a tortured misconstruction of the letter and spirit of the unemployment compensation law." Id. at 894.
More analogous to the case before us is Paschal v. Florida Department of Labor & Employment Security, 405 So.2d 1020 (Fla. 3d DCA 1981), petition for review denied, 412 So.2d 468 (Fla. 1982), which affirmed the Commission's ruling that a county employee was disqualified from unemployment compensation benefits because he had voluntarily left his employment without good cause attributable to his employer where he was terminated from his job, which required the use of a privately owned vehicle, after his automobile was repossessed and he did not secure another. There, as here, the employee had failed to meet a known condition of his employment. Whether or not this failure was the employee's fault, i.e., whether the employee had the ability to meet the employment condition if he so chose, was immaterial; the issue was whether his failure to meet his job requirements was due to good cause attributable to his employer. See also Coolaire Nordick International Corp. v. Florida Department of Commerce, 356 So.2d 1317 (Fla. 4th DCA 1978).
Section 443.101(1)(a), Florida Statutes (1981), provides that an individual shall be disqualified for benefits when "he has voluntarily left his employment without good cause attributable to his employer or has been discharged by his employing unit for misconduct connected with his work... ."
The employer in Paschal clearly had nothing to do with the employee's loss of his means of transportation. Here, in contrast, it was the very action of the employer which resulted in claimant's sudden inability to meet an employment condition of paramount importance. Nevertheless, the employer cannot be held to be at fault when its action was precipitated by misconduct on the part of claimant's husband, an indispensable member of her group parent team.
We therefore hold that where, as here, an employee becomes unable to meet a known, understood, and accepted condition of employment, and where, as here, that inability cannot be considered to be the fault (in the sense of blameworthiness) of the employer, the employee will be considered to have "voluntarily left his employment without good cause attributable to his employer," regardless of whether the employee resigns or is discharged and regardless of whether the employee's inability was reasonably avoidable or is reasonably remediable by the employee. We see no justifiable basis for transferring the economic misfortune of one innocent party onto a second innocent party over that second party's objection.
The Commission stated in its order: "Disqualification of the claimant would require that we attribute to the claimant the misconduct of her husband. Such an attribution would require a finding of guilt by association." We disagree. It is unnecessary to attribute "guilt" or moral culpability to an employee in order to hold him or her not entitled to unemployment compensation benefits. Our holding here simply refuses to place the responsibility for an employee's sudden inability to meet an essential and reasonable condition of his or her employment agreement on the employer unless the employer both caused the employee's inability and can be considered morally or legally blameworthy therefor.
An additional consideration here is that if claimant is awarded unemployment *335 compensation benefits, the payments will inure to the benefit of her husband as well, although it was his misconduct that engendered the dispute before us. It is a basic equitable tenet that no one shall be permitted to profit by his own wrong. Ashwood v. Patterson, 49 So.2d 848 (Fla. 1951); Sahler v. Sahler, 154 Fla. 206, 17 So.2d 105 (1944).
Chapman v. Florida Department of Labor & Employment Security, 415 So.2d 820 (Fla. 2d DCA 1982), upon which appellees rely, is distinguishable. Chapman involved a husband and wife who were employed at an apartment complex. The wife was discharged following a dispute with the employer. When questioned by the employer about his plans concerning his job, the husband replied that he would eventually leave the job, but would remain as long as the employer wanted. The employer then told him to leave the job immediately. This court concluded that the employer's action amounted to a discharge, contrary to the Commission's ruling that the husband had voluntarily left the job. While these facts are strikingly similar to those in the instant case, a crucial element is missing in Chapman. There is no indication that the Chapmans were hired as an inseparable team, as were the Mikells here.
Accordingly, the Commission's order ruling claimant Mary E. Mikell eligible for unemployment compensation benefits is REVERSED and the cause REMANDED to the Commission with directions to affirm the appeals referee's ruling that claimant left her employment without good cause attributable to her employer and is therefore disqualified for benefits.
DANAHY, J., and THREADGILL, EDWARD F., Jr., Associate Judge, concur.
NOTES
[1] In fact, her resident director stated at the hearing before the appeals referee that he was willing to give claimant a positive letter of recommendation for submission to future prospective employers.