523 So.2d 175 (1988)
Roges ADAIN, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION, Appellee.
No. 87-302.
District Court of Appeal of Florida, Third District.
April 5, 1988.
John R. Greenwood, Miami, for appellant.
John D. Maher, Tallahassee, for appellee.
Before BARKDULL, NESBITT and JORGENSON, JJ.
NESBITT, Judge.
Roges Adain appeals a ruling by the Unemployment Appeals Commission (UAC) denying him compensation benefits. We affirm.
Adain, a Haitian alien, was granted a work permit by the Immigration & Naturalization Service (INS). He obtained a job and proceeded to work legally in the United States. Upon later receipt of a notice from the INS that his work permit was being revoked, Adain left his job, believing he was not able to work. The revocation of Adain's work authorization and those of *176 hundreds of other Haitians (after they applied for unemployment compensation) were the result of Project SAVE (Systematic Alien Verification Enforcement), a program initiated by the INS to deter undocumented immigration by denying the benefits of publicly funded entitlement programs to aliens not eligible to receive them. See Comment, Project SAVE: Can It Work?, 18 U. Miami Inter-American L.Rev. 561 (1987). A class action suit was filed by the affected workers against the INS, the United States Department of Labor, and the Florida Department of Labor and Employment Security when it was discovered that the INS was illegally revoking permits. Augustin v. Harrison, Case no. 86-0882-Civil, United States District Court, South District of Florida. As settlement of the Augustin case, the INS admitted it had illegally revoked the work authorizations. The permits were retroactively reinstated and damages were awarded. Adain then instituted proceedings to collect unemployment compensation for the time he actually lost between when he left his employment and when his work permit was officially withdrawn. He appealed an initial determination denying him benefits. The appeals referee found him to be disqualified because he had voluntarily quit his employment without good cause attributable to his employer. § 443.101(1)(a), Fla. Stat. (1985). The UAC affirmed that decision, and this appeal followed.
At issue is the correct reading of section 443.101(1)(a), Florida Statutes, which states that an individual shall be disqualified for benefits: "For the week in which he has voluntarily left his employment without good cause attributable to his employer... ." Adain claims that he did not voluntarily leave his work but that he was forced to do so as a result of the illegal revocation of his work permit by the INS; thus, he asserts, he is entitled to benefits. In opposition, the UAC, while conceding that Adain did not voluntarily leave his job, claims that he is nevertheless ineligible for benefits because his departure was not the result of any action on the part of his employer as required by the statute.
Appellant would have us read section 443.101(1)(a) in such a way as to totally ignore the language "without good cause attributable to the employer" if we find that Adain did not leave his job voluntarily. However, basing our decision on the unambiguous legislative history of this statute, as well as on a number of cases which have applied its terms, we are required to hold that section 443.101(1)(a) disqualifies Adain from receiving unemployment compensation.
The history of this section is quite clear in portraying the legislature's intent in passing the law. Prior to 1963, the law did not require the employee to show that he left his work for a good cause attributable to the employer. The employee needed only to show that he was voluntarily leaving for a good reason. Under that version of the statute, for example, this court interpreted good cause to include familial obligations. Yordamlis v. Florida Indus. Comm'n, 158 So.2d 791 (Fla. 3d DCA 1963); Williams v. Florida Indus. Comm'n, 135 So.2d 435 (Fla. 3d DCA 1961). However, in 1963, the legislature amended the law, then section 443.06(1), to require the good cause for voluntary termination to be "attributable to the employer." See Ch. 63-327, § 1, Laws of Fla. Clearly then, by this change the legislature intended to narrow eligibility for unemployment compensation. See Beard v. State, Dep't of Commerce, Div. of Employment Sec., 369 So.2d 382 (Fla. 2d DCA 1979).
A number of cases have applied the statute at issue to require the element of good cause attributable to the employer. In Florida Sheriffs Youth Fund v. Department of Labor & Employment Sec., 436 So.2d 332 (Fla. 2d DCA 1983), the claimant and her husband worked as "cottage" parents at a youth home. The husband was discharged due to his misconduct. Even though the claimant was a satisfactory employee, she was also dismissed because one of the conditions of her employment was that she work with her husband as a team. In denying her benefits claim, the court held that her husband's discharge rendered her unable to meet a known and accepted condition of employment. The court stated *177 that it saw no justifiable reason to transfer the economic misfortune of the claimant, concededly an innocent party, to the employer, another innocent party, if the employer objected. Id. at 334. See also School Bd. of Lee County v. Florida Unemployment Appeals Comm'n, 500 So.2d 253 (Fla. 1st DCA 1986); Department of Air Force v. State, Unemployment Appeals Comm'n, 486 So.2d 632 (Fla. 1st DCA 1986); Paschal v. Florida Dep't of Labor & Employment Sec., 405 So.2d 1020 (Fla. 3d DCA 1981), review denied, 412 So.2d 468 (Fla. 1982).
While appellant would have us base a decision in his favor on Parker v. Department of Labor & Employment Sec., 440 So.2d 438 (Fla. 1st DCA 1983), we find that case distinguishable. There, the claimant had been arrested and jailed as a result of a domestic dispute. When he was released twenty-six days later, he sought to return to work but was told he had been replaced. The court held he was entitled to benefits and pointed out that the employee had telephoned his employer three times while in jail and explained he would be told within twenty-one days whether he would be prosecuted. Although the employer had a policy of routinely granting leaves of absence for up to thirty days, the employee was not told of this. In addition, the employee's supervisor told him that his job would be held open for him. There are no analogous facts in Adain's case.
Turning from Parker, it is ironic that even though in all of the cited cases the court denied benefits because the employee left voluntarily without good cause attributable to the employer, all these claimants, as well as Roges Adain, can convincingly argue that there was nothing voluntary about their leaving; each was compelled to leave for a very good reason. Nevertheless, all were denied benefits. To understand how this can happen it can be inferred that "voluntary," as used in the statute, has a precise legal meaning. Within the statute, it functions as a preliminary test to determine whether the employee "[became] unable to meet a known, understood, and accepted condition of employment." Florida Sheriffs Youth Fund, 436 So.2d at 334. If such was the case, then the second part of the test is applied: Did he become unable to meet the conditions of employment due to some act of the employer? Id.
Having parsed out the meaning of section 443.101(1)(a), we can now apply the facts of this case to the statute. Roges Adain became unable to meet the terms of his job because his work permit was void. While this was an excellent reason for leaving, his departure was not caused by his employer. It was, in fact, illegally caused by a third party, the INS. Nevertheless, this twist does not alter the fact that he did not meet statutory requirements necessary to qualify him for unemployment compensation benefits. "[I]mmigration is a matter of exclusive federal jurisdiction and where INS denies or revokes an alien's work authorization, effectively rendering him ineligible for governmental benefits to which he may otherwise be entitled, even if the action is unlawful, the INS determination is binding on the states... ." Alfred v. Florida Dep't of Labor & Employment Sec., 487 So.2d 355, 357 (Fla. 3d DCA 1986).
We realize the harsh consequences which may sometimes result when unemployment benefits are denied to claimants who had compelling reasons for leaving their jobs. We are also aware that the declared public policy behind the Unemployment Compensation Act is to protect against "[e]conomic insecurity due to unemployment" and the resulting "serious menace to the health, morals, and welfare of the people of this state." § 443.021, Fla. Stat. (1985). Nonetheless, we must ascribe to words within a statute their ordinary meaning. Beard, 369 So.2d at 385; Florida Gulf Health Sys. Agency, Inc. v. Commission on Ethics, 354 So.2d 932 (Fla. 2d DCA 1978). And, while the unemployment compensation statute is remedial and thus to be construed liberally, § 443.031, Fla. Stat. (1985), we cannot construe it so liberally as to reach a result contrary to the clear intent of the legislature. See Stern v. Miller, 348 So.2d 303, 308 (Fla. 1977).
*178 Accordingly, we affirm the decision of the UAC denying Adain unemployment compensation benefits.