567 So.2d 420 (1990)
GULF COUNTY SCHOOL BOARD, Petitioner,
v.
Ernest S. WASHINGTON, et al., Respondents.
No. 74339.
Supreme Court of Florida.
September 6, 1990.
Charles A. Costin of Costin and Costin, Port St. Joe, for petitioner.
John D. Maher, Tallahassee, for respondents.
Joseph L. Shields, Tallahassee, amici curiae for Florida School Boards Ass'n. and Florida Ass'n. of School Administrators.
GRIMES, Justice.
This is a petition to review Gulf County School Board v. Washington, 544 So.2d 288 (Fla. 1st DCA 1989). The district court of appeal certified conflict with Florida Sheriffs Youth Fund v. Department of Labor & Employment Security, 436 So.2d 332 (Fla. 2d DCA 1983). Our jurisdiction is predicated upon article V, section 3(b)(4), Florida Constitution. We agree with the decision of the First District Court of Appeal.
The pertinent facts reflect that the Gulf County School Board first hired Washington as a teacher in August, 1984. At that time, Washington had only a temporary teaching certificate which was valid for the 1984-85 school year. He was subsequently employed for both the 1985-86 and 1986-87 school years, and for each of those years Washington was able to obtain another one-year temporary certificate. He was specifically advised that to be eligible for a regular teaching certificate, he had to pass the Florida teacher certification examination. He understood that in 1987 he would not be eligible to receive another one-year temporary teaching certificate. Washington took and failed the teacher certification examination in 1985, 1986, and 1987. Washington's last day of employment with the school board was in May of 1987.
Washington thereafter applied for unemployment benefits. When his claim was contested, the matter was heard by an appeals referee for the Unemployment Compensation Appeals Bureau. In his findings of fact, the referee noted that Washington had failed the professional portion of his tests and, because he had failed those tests, "he was not granted a teaching certificate for the 1987-'88 school year." In his conclusions of law, the appeals referee explained:
[T]he claimant was never able to meet the requirements of obtaining his teaching *421 certificate. He was able to obtain a temporary certificate, whose purpose is to allow an individual to become employed only until the end of that one year certificate or obtaining of a permanent certificate. It is concluded that the claimant's discharge occurred because of his inability to pass a test, not due to misconduct connected with work, and the claimant is properly qualified for benefits.
That decision was affirmed by the Unemployment Appeals Commission.
The First District Court of Appeal noted that the issue to be decided was whether Washington had voluntarily left his teaching position without good cause attributable to his employer under section 443.101, Florida Statutes (1987). In a split decision, the court approved the award of benefits by the Unemployment Appeals Commission and held that "denying benefits to one who has made a good faith effort to comply with employment requirements would contravene public policy." Washington, 544 So.2d at 289. The court distinguished its earlier decision in School Board of Lee County v. Florida Unemployment Appeals Commission, 500 So.2d 253 (Fla. 1st DCA 1986), in which unemployment compensation was denied to a teacher when he resigned after once failing the teacher certification examination without seeking to pass any subsequent examinations. The majority concluded that "when an employee makes a good faith effort to meet employment conditions, but fails to do so, ... the employee has not left his employment `voluntarily.'" Washington, 544 So.2d at 289.
The school board relies on a number of district court of appeal cases which have denied unemployment compensation benefits to employees who were unable to meet the conditions of their employment through no fault of their employer.
In Florida Sheriffs Youth Fund, the claimant and her husband were hired to work at the Florida Sheriffs Girls Villa as "group" parents. As a condition of employment, each team of group parents was required to be a married couple, which was standard practice in institutions of this kind. Subsequently, the husband was discharged for misconduct. However, his wife, the claimant, was a satisfactory employee who was not guilty of any misconduct. Her discharge was due solely to the condition of employment requiring that group parents be a husband-and-wife team. The district court held that
where, as here, an employee becomes unable to meet a known, understood, and accepted condition of employment, and where, as here, that inability cannot be considered to be the fault (in the sense of blameworthiness) of the employer, the employee will be considered to have "voluntarily left his employment without good cause attributable to his employer," regardless of whether the employee resigns or is discharged and regardless of whether the employee's inability was reasonably avoidable or is reasonably remediable by the employee. We see no justifiable basis for transferring the economic misfortune of one innocent party onto a second innocent party over that second party's objection.
436 So.2d at 334.
Likewise, in Neller v. Unemployment Appeals Commission, 510 So.2d 652 (Fla. 5th DCA 1987), the court upheld an order denying unemployment compensation in a case where the use of the employee's personal automobile was an accepted condition of employment. The claimant had been employed to deliver pizzas and, when her car became disabled, her employer told her to return to work when her car had been repaired. The district court held: "It was not the employer's fault that the employee's car became disabled. Therefore, the employee is considered to have voluntarily left her employment without good cause attributable to her employer, and accordingly, is not entitled to unemployment compensation." 510 So.2d at 652.
Similar decisions were reached in Adain v. Florida Unemployment Appeals Commission, 523 So.2d 175 (Fla. 3d DCA 1988) (alien lost his job when his work permit was illegally revoked); Prison Rehabilitation Industries & Diversified Enterprises *422 v. Unemployment Appeals Commission, 476 So.2d 1309 (Fla. 2d DCA 1985), review denied, 486 So.2d 598 (Fla. 1986) (prison worker fired when Department of Corrections barred him from entry into prison because of selling drugs to inmates); Paschal v. Florida Department of Labor & Employment Security, 405 So.2d 1020 (Fla. 3d DCA 1981), review denied, 412 So.2d 468 (Fla.), cert. denied, 456 U.S. 981, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982) (claimant lost job requiring use of privately owned vehicle when automobile was repossessed). We believe that in each of these cases the court misconstrued the unemployment compensation statutes.
The declared purpose of Florida's Unemployment Compensation Law is to provide financial assistance to persons unemployed through no fault of their own. § 443.021, Fla. Stat. (1987). The legislature has mandated that the Unemployment Compensation Law is to be liberally construed in order to achieve its intended purpose. § 443.031, Fla. Stat. (1987).
The Unemployment Compensation Law disqualifies a person who is no longer employed from collecting benefits under only two circumstances. One of these is when the claimant "has been discharged by his employing unit for misconduct connected with his work." § 443.101(1)(a), Fla. Stat. (1987). For purposes of the Unemployment Compensation Law, section 443.036(25), Florida Statutes (1987), defines misconduct as follows:
(25) MISCONDUCT.  "Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
The other circumstance mandating disqualification occurs when the claimant "has voluntarily left his employment without good cause attributable to his employer." § 443.101(1)(a). Despite the fact that the school board terminated Washington's employment, it claims that he is not entitled to unemployment compensation benefits because he failed the requisite Florida teachers' examination. According to the cases cited by the school board, when an employee is unable to comply with a known condition of employment without any fault of the employer, the employee is considered to have "voluntarily left his work without good cause attributable to his employing unit." These cases have mistakenly created a third circumstance of disqualification which is neither provided nor envisioned by the Unemployment Compensation Law.
The underlying premise of these decisions is that it would be unfair to impose additional unemployment compensation premiums upon a faultless employer simply because the employee could not meet one of the known conditions of employment. While this rationale has some appeal, the Unemployment Compensation Law does not recognize it as a basis for disqualification. If the legislature accepts the dissent's concern that our decision will discourage temporary employment pending the passing of a licensure examination, the law can be amended to provide a third basis for the denial of benefits.
When Washington failed to pass the Florida teachers' examination, the school board properly terminated his employment. Had it been shown that Washington refused to take the steps necessary to adequately prepare for the examination, it may be that he could be denied unemployment compensation benefits for misconduct. Here, however, the school board does not even assert that misconduct was involved. It relies solely upon the legal fiction that Washington voluntarily quit his employment, even though it is undisputed that he was terminated because he failed to *423 pass the examination. It is well settled that an employee who is discharged because he cannot adequately perform the work is entitled to unemployment compensation in spite of the fact that the employer had good reason to fire him. Lewis v. Unemployment Appeals Comm'n, 498 So.2d 608 (Fla. 5th DCA 1986); Fredericks v. Florida Dep't of Commerce, 323 So.2d 286 (Fla. 2d DCA 1975); Spaulding v. Florida Indus. Comm'n, 154 So.2d 334 (Fla. 3d DCA 1963). There is no meaningful difference between an employee who unavoidably finds that he or she cannot meet a known condition of employment and one who is discharged for simply failing to measure up to the requirements of the job.
Contrary to the school board's argument, the legislative history of section 443.101(1)(a) does not support its position. Before 1963, the law did not require the employee to show that he left his work for good cause attributable to the employer. See § 443.06(1), Fla. Stat. (1961). He needed only to show that he voluntarily left for a good reason. Under the statute as then worded, the courts authorized the payment of unemployment compensation when an employee resigned to tend to familial obligations. Yordamlis v. Florida Indus. Comm'n, 158 So.2d 791 (Fla. 3d DCA 1963); Williams v. Florida Indus. Comm'n, 135 So.2d 435 (Fla. 3d DCA 1961). In 1963, the legislature amended the law to require that even when an employee quits for a good reason, he can only recover unemployment compensation if there was some fault attributable to the employer. Ch. 63-327, Laws of Fla. Thus, it is clear that the legislature recognized that the determination of whether or not the employer is at fault only comes into play when an employee voluntarily leaves his work. It is illogical to say that when an employee is fired he has voluntarily left his work.
We approve the opinion of the district court of appeal and disapprove Adain, Neller, and Florida Sheriffs Youth Fund.[*]
It is so ordered.
SHAW, C.J., and McDONALD, EHRLICH, BARKETT and KOGAN, JJ., concur.
OVERTON, J., dissents with an opinion.
OVERTON, Justice, dissenting.
The majority opinion, by purportedly aiding the unemployed, will actually create unemployment. This decision will no doubt result in a substantial decrease in the number of jobs available to entry-level professionals who have not yet passed their licensure examinations. Now only the legislature may correct the problem.
The majority opinion is, in my view, contrary to the legislature's intent and is contrary to six district court of appeal opinions. Adain v. Unemployment Appeals Comm'n, 523 So.2d 175 (Fla. 3d DCA 1988); School Board v. Florida Unemployment Appeals Comm'n, 500 So.2d 253 (Fla. 1st DCA 1986); Prison Rehabilitation Indus. & Diversified Enters. v. Unemployment Appeals Comm'n, 476 So.2d 1309 (Fla. 2d DCA 1985), review denied, 486 So.2d 598 (Fla. 1986); Neller v. Unemployment Appeals Comm'n, 510 So.2d 652 (Fla. 5th DCA 1987); Florida Sheriffs Youth Fund v. Department of Labor and Employment Sec., 436 So.2d 332 (Fla. 2d DCA 1983); Paschal v. Florida Dep't of Labor & Employment Sec., 405 So.2d 1020 (Fla. 3d DCA 1981), review denied, 412 So.2d 468 (Fla.), cert. denied, 456 U.S. 981, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982). A *424 clear majority of the district courts of this state have held that a claimant is not entitled to compensation under these circumstances.
The single issue in this case is whether the statutory provisions contained in chapter 443, Florida Statutes (1987), place responsibility on an employer for an employee's inability to meet an essential and reasonable condition of employment, where the employee initially agreed to the condition and the employer did not cause the employee's inability to comply. In this instance, Washington had obtained successive one-year temporary teaching certificates for the school years 1984-85, 1985-86, and 1986-87. He had single-year contracts for each of these three years. To obtain a teaching position, state law required him to pass the Florida teacher certification examination, and he understood, in 1987, that he would not be eligible to receive another one-year temporary teaching certificate if he did not pass the examination. Washington took and failed the teacher certification examination in 1985, 1986, and 1987. His last day of employment with the school board was in May of 1987, when his one-year contract with the school board terminated. He testified that he knew he could not be offered a new contract for the 1987-88 school year because he possessed neither a temporary nor a regular teaching certificate.
The statutes in effect in 1987 stated, in pertinent part:
[A] person who meets all certification requirements which have been established by law or rule, other than the passing of the written examination, may be issued an initial temporary certificate for the first year of employment in a public school district in this state... .
... [A]n additional temporary certificate may be issued under rules of the state board to a person who has passed the reading, writing, and mathematics portions of the required written examination but who has not passed the professional section. A maximum of two temporary certificates may be issued to a person under the provisions of this paragraph.
§ 231.17(2)(g) & (h), Fla. Stat. (1987). In addition, section 231.15(1), Florida Statutes (1987), requires that "[e]ach person employed or occupying a position as ... teacher ... in any public school of any district of this state shall hold the certificate required by law and by rules of the state board in fulfilling the requirements of the law for the type of service rendered." Clearly, the school board had no choice in the matter because it was prohibited by law from employing Washington as a teacher for the 1987-88 school year. The hearing officer noted that Washington "was never able to meet the requirements of obtaining his teaching certificate."
Requiring the Gulf County School Board or any school board to make unemployment premium contributions under these circumstances will, in my view, discourage school boards from allowing their administrators to hire teachers with only temporary certificates. They will be reluctant to do so because of the potential increased cost of unemployment compensation premiums. The record reflects that in this instance the Gulf County School Board will experience a ten percent increase in its premium, attributable to Washington's unemployment compensation claim.
I believe that the majority decision will result in a decrease in the number of jobs available to entry-level teachers who have not yet passed the certification examination. Moreover, the policy set by the majority will also adversely affect other professions in which employers traditionally hire persons prior to their passing a licensure examination with the understanding that such passage is a condition of employment. Employers in these situations will now be inclined to require entry-level employees to pass the necessary licensure examination before they are employed and will thereby reduce the number of employment opportunities available to those who seek positions while still completing the requirements for professional licenses. In my view, the majority's construction of the statute, which could potentially restrict job availability for entry-level professionals, is *425 inconsistent with the legislature's express declaration of public policy, which declares that the state seeks to protect citizens from economic insecurity "by devising appropriate methods for reducing the volume of unemployment." § 443.021, Fla. Stat. (1987).
I find that where an employee must obtain a license in order to hold a position, where the employee understands and accepts this condition of employment, and where the employee's inability to comply with the condition is not attributable to the employer, the employee must be considered to have voluntarily left his or her employment without good cause attributable to the employer. The majority, in its opinion, explains that "[t]he declared purpose of Florida's Unemployment Compensation Law is to provide financial assistance to persons unemployed through no fault of their own. § 443.021, Fla. Stat. (1987)." Majority op. at 421-422. The majority seems to believe that employees who have failed their licensure examinations are unemployed through no fault of their own. I find that, in such circumstances, the fault of unemployment lies with the employee, not the employer, the state, or the licensing board. Further, in this case, Washington cannot be employed as a teacher, regardless of how many unfilled teaching positions are available. To say that such a person is entitled to compensation as an unemployed teacher defies logic and reason.
The Second District Court of Appeal, in Florida Sheriffs Youth Fund, stated:
We therefore hold that where, as here, an employee becomes unable to meet a known, understood, and accepted condition of employment, and where, as here, that inability cannot be considered to be the fault (in the sense of blameworthiness) of the employer, the employee will be considered to have "voluntarily left his employment without good cause attributable to his employer," regardless of whether the employee resigns or is discharged... .
436 So.2d at 334. That analysis was later reaffirmed by the Second District in Prison Rehabilitation Industries. That reasoning and analysis should also be adopted by this Court.
For the above reasons, I would quash the decision of the First District Court of Appeal with directions that the claim for unemployment compensation be denied.
NOTES
[*] In Prison Rehabilitation, a PRIDE employee was barred access to the prison in which he worked because the Department of Corrections had concluded that he had sold drugs to inmates. Under the rationale we adopt in this opinion, the court erred in concluding that the employee voluntarily terminated his employment without good cause attributable to his employer. However, the claimant was properly denied benefits in that case because by allowing himself to become barred from his workplace by reason of the sale of drugs, he necessarily committed misconduct connected with his work. The holding of Paschal can be harmonized by concluding that when the employee permitted his automobile to be repossessed at a time when he was gainfully employed, he was guilty of misconduct which was connected with his work in the sense that the use of his privately owned vehicle was required for the job.